UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SCOTT SHARP,                )
                            )
        Plaintiff,          )
                            )
v.                          )    No.: 25-1139-CSB
                            )
                            )
SERGEANT MILLER and         )
WARDEN CHANCE JONES,        )
                            )
        Defendants.         )

## MERIT REVIEW ORDER

**COLIN S. BRUCE, U.S. District Judge:**

Plaintiff Scott Sharp, proceeding *pro se*, is an inmate with the Illinois Department of Corrections ("IDOC") who is incarcerated at the IDOC's Illinois River Correctional Center ("Illinois River"). The Court granted Plaintiff leave to proceed *in forma pauperis*, and the case is now before the Court for a merit review of his claims.

Because he is a prisoner for purposes of the Prison Litigation Reform Act ("PLRA"), the Court is required by 28 U.S.C. § 1915A to "screen" Plaintiff's Complaint and, through such process, to identify and dismiss any legally insufficient claim or the entire action, if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A.

1

In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff alleges that, on November 19, 2024, Defendant Sgt. Miller entered into his cell early in the early morning and removed a piece of cardboard from the cell's window that Plaintiff's cellmate had placed there. Sgt. Miller, then, angrily slammed the cell door, and Plaintiff attempted to return to sleep.

Approximately twenty (20) minutes later, three other correctional officers arrived at Plaintiff's cell, placed Plaintiff and his cellmate in handcuffs, and escorted them to the segregation unit. The correctional officers told the two inmates that they were being placed on investigative status and that they would need to speak with the internal affairs department about the situation. Upon arriving at the segregation unit, Plaintiff was forced to remove his clothing and was placed in a cell with no bedding for two hours. Plaintiff remained in segregation for two days and was not allowed to take a shower for these two days. Plaintiff was also provided minimal food for these two days, which was ice cold upon receipt. Plaintiff also claims that his cell was very cold and that the cell was without any heat.

On November 21, 2024, Plaintiff received a disciplinary report that Sgt. Miller had written against him, alleging that he had threatened the safety and security of the institution. According to Plaintiff, Sgt. Miller had feigned being exposed to an illegal

chemical or substance when she touched the piece of cardboard that Plaintiff's cellmate had used to block the window to the cell. Plaintiff was returned to his original cell on November 21, 2024.

Plaintiff's Complaint fails to state a claim upon which relief can be granted. Plaintiff could be attempting to state four claims against Sgt. Miller and/or Warden Chance Jones, but none of Plaintiff's potential legal claims are sufficient to allow him to proceed in this case.

To the extent that Plaintiff is attempting to state a Due Process claim under the Fourteenth Amendment based upon being placed into segregation for two days, Plaintiff's stay in segregation was too short in duration to invoke the Fourteenth Amendment's protections. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1. Due Process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit has "concluded that inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")).

In fact, some courts have concluded that placement in non-punitive segregation can "never implicate a liberty interest." *E.g., Williams v. Brown*, 849 F. App'x 154, 157 n.3 (7th Cir. 2021). Regardless, timing plays a part in the analysis, even when conditions are significantly harsher. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, but both the duration and the conditions of the segregation must be considered in determining whether due process is implicated."); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98, 697 n. 2 & 3 (7th Cir. 2009) ("In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh."); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty).

In the instant case, even assuming that Plaintiff's placement into segregation triggered his Due Process rights, the Seventh Circuit has held that such a minimal period of time cannot, as a matter of law, violate a prisoner's liberty interests under the Fourteenth Amendment. This Court is bound by the Seventh Circuit's holding, and therefore, Plaintiff's Complaint fails to state a claim based upon the violation of his Fourteenth Amendment Due Process rights for being placed into segregation for two days.

Similarly, Plaintiff's attempts to state a claim for a violation of his Eighth Amendment rights based upon the conditions of his confinement in segregation fails as a matter of law. The United States Supreme Court has made clear that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions;' it outlaws cruel and

unusual 'punishments.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This means that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as an infliction of punishment." *Id*. at 838.

Accordingly, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

This type of deliberate indifference "implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Frazen*, 780 F.2d 645, 653 (7th Cir. 1985). "[M]ere negligence or even gross negligence does not constitute deliberate indifference," *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996), and it is not enough to show that a prison official merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995), *abrogated on other grounds, Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

Furthermore, discomfort is constitutionally insignificant. *Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004) ("[T]he Eighth Amendment is concerned with both the 'severity' and the 'duration' of the prisoner's exposed to inadequate cooling and ventilation."); *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992) (objective component met where prison conditions were "so strikingly reminiscent of the Black Hole of

5

Calcutta"); *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988); *Lunsford v. Bennett,* 17 F.3d 1574, 1581 (7th Cir. 1994) ("[t]he Constitution does not require prison officials to provide the equivalent of hotel accommodations or even comfortable prisons.").

Further, prisoner must also show that he sustained some degree of harm in order to prevail on a conditions of confinement claim under the Eighth Amendment. Without a showing of any harm resulting from the alleged deprivations, a prisoner plaintiff cannot prevail. *Vasquez v. Frank*, 2008 WL 3820466, * 2-3 (7th Cir. Aug. 15, 2008) (holding that ventilation that allegedly caused dizziness, migraines, nasal congestion, nose bleeds and difficulty breathing did not rise to the level of an Eighth Amendment violation); *Jasman v. Schmidt*, 2001 WL 128430, * 2 (6th Cir. Feb. 6, 2001) (rejecting a prisoner's complaint about poor ventilation where plaintiff failed to allege harm caused by the ventilation); *Chandler*, 379 F.3d at 1290-98 (citing cases and concluding that a ventilation system that allowed summer temperatures to average eighty-five or eighty-six degrees during the day and eighty degrees at night was not sufficiently extreme to violate the Eighth Amendment where such temperatures were expected and tolerated by the general public in Florida).

Here, Plaintiff alleges that he was cold and that he was served cold food for two days. The Court finds, as a matter of law, that, although these conditions were unpleasant, they did not violate Plaintiff's Eighth Amendment rights. *E.g.*, *Darden v. Martini*, 2024 WL 3621126, * 2 (S.D. Ind. July 31, 2024) (holding that placement in a dirty cell for two days did not violate the plaintiff's Eighth Amendment rights); *Newmones v. Ransom*, 2024 WL 624239, * 4 (W.D. Pa. Feb. 14, 2024) (two days in cell covered in

inmate's feces did not state an Eighth Amendment claim); *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir. 1988) (five day stay in "filthy, roach-infested cell" not unconstitutional).

To the extent that Plaintiff is attempting to state a Constitutional claim for being issued a false disciplinary ticket, Plaintiff claim also fails as a matter of law. "[A] false disciplinary ticket does not give rise to a due process violation." *Sanders v. Hutchings*, 2024 WL 3673163, * 2 (S.D. Ill. Aug. 6, 2024). This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), *aff'd*, 70 F.3d 117 (7th Cir. 1995) (citations omitted); *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984).

Plaintiff has not alleged that he was denied any procedural Due Process safeguards during his disciplinary hearing; he only alleges that he should not have received a disciplinary ticket. Accordingly, Plaintiff's purported claim is insufficient to state a Due Process violation.

As for his claim against Warden Jones that he failed to train or to supervise Sgt. Miller properly, Plaintiff's claim too fails as a matter of law. "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) (citations omitted). Although "[s]upervisors may be liable under § 1983 for a failure to train, . . . the

7

circumstances are extremely limited. Negligence, or a 'should have known' standard, is not enough. Rather, the plaintiff must [allege] that the defendant knew that his failure to train was likely to lead to constitutional violations." *Ghashiyah v. Frank*, 2007 WL 5517455, * 2 (W.D. Wis. Aug. 1, 2007) (citing *Kitzman–Kelley v. Warner*, 203 F.3d 454, 459 (7th Cir. 2000)).

Furthermore, "failure to train claims are usually maintained against municipalities [or corporations], not against individuals, and, in the Eighth Amendment context, such claims may only be maintained against a municipality [or corporation]." *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (quoting *Sanville v. McCaughtry,* 266 F.3d 724, 739–40 (7th Cir. 2001)). More specifically, liability for failure to train or to supervise may be maintained only against a municipality or corporation, and the claim must be maintained pursuant to the United States Supreme Court's holding in *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 694 (1978).

Here, Plaintiff argues that the Warden at Illinois River failed to train and to supervise a state employee (*i.e.*, Sgt. Miller) properly. But neither Defendant is a municipality or an officer of a municipality. They are both employees of the State of Illinois. Therefore, Plaintiff's potential *Monell* claim against either Defendant in this suit may not be maintained because *Monell* does not apply to states, state agencies, or state departments. *Joseph v. Board of Regents*, 432 F.3d 746, 748-49 (7th Cir. 2005) ("The Supreme Court has been clear, however, that *Monell's* holding applies only to municipalities and not states or states' departments."); *Huspon v. Indiana Dep't of Correction*, 2011 WL 4730545, * 3 (S.D. Ind. Oct. 7, 2011).

Finally, to the extent that Plaintiff is seeking to maintain any claims against Defendants based upon alleged violations of Illinois law, the Court declines to exercise supplemental jurisdiction over those alleged claim. The Court has dismissed Plaintiff's federal claims, and therefore, the proper course of action is for this Court to decline to exercise jurisdiction over his state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (describing a "sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims.").

**IT IS, THEREFORE, ORDERED:**

**1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted, and any attempt by Plaintiff to amend his Complaint based upon the asserted facts would be futile. Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1915A.**

**2.     This case is DISMISSED WITH PREJUDICE.  The Clerk of the Court is directed to add this case to the "three-strikes list" as a potential strike against Plaintiff under the Prison Litigation Reform Act.**

**3.     The Clerk is further directed to enter judgment in Defendants' favor and against Plaintiff. All other pending motions are denied as moot, and this case is terminated. All deadlines and settings on the Court's calendar are vacated.**

4. If he wishes to appeal this judgment, Plaintiff must file a notice of appeal with this Court within thirty (30) days of the entry of judgment. Fed. R. App. P. 4(a)(4).

5. If he wishes to proceed *in forma pauperis* on appeal, Plaintiff's motion for leave to appeal *in forma pauperis* must identify the issues that he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective).

6. If he chooses to appeal, Plaintiff will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED this 12th day of May, 2025

                                                     s/ Colin S. Brue
                                                     COLIN S. BRUCE
                                      UNITED STATES DISTRICT JUDGE